*294 E. GRADY JOLLY, Circuit Judge:
Jaysukh Zalawadia was deported to India while his habeas appeal challenging the legality of the deportation order was pending. This appeal requires us to determine the effect deportation of a habeas petitioner has on (1) our ability to exercise continued jurisdiction over that petition and (2) the nature and scope of habeas relief available to an alien deported under a defective deportation order. For the reasons explained below, we hold that we have habe-as jurisdiction over this petition. We vacate this deportation order and also hold that, because of the limited nature of habe-as, we lack authority, in this habeas action, to grant relief beyond simply vacating the defective order under which he was deported. The petitioner, whose liberty interests and rights are now no longer encumbered by the deportation order, must turn to other procedural remedies, if any, for further relief.
I
Jaysukh Zalawadia, a native and citizen of India, was admitted into the United States in September 1988. In 1995, he pleaded guilty to a charge of burglary and felony theft and was sentenced to two years probation and required to pay restitution. At the time, his guilty plea had no immediate effect on his immigration status. Under the Immigration and Nationality Act (INA) as it then existed, conviction of these offenses did not render him subject to deportation; they were not de-portable “aggravated felonies” as defined by the Act[1] nor did they meet the conditions necessary to constitute deportable “crimes of moral turpitude.”[2] These convictions did create the possibility that Za-lawadia could be rendered inadmissible should he leave the country and attempt to re-enter; under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), a lawful permanent resident who had been convicted of a “crime involving moral turpitude” would be deemed inadmissible should that resident leave the United States and later seek reentry. However, the Supreme Court had interpreted this condition only to apply to travel outside the United States that was not “brief, casual or innocent.” Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963) (holding that lawful permanent residents who travel abroad should be admitted, even if otherwise inadmissible, if their travel was “brief, casual, or innocent”). In addition, the INA contained a provision granting the Attorney General of the United States the broad discretion to admit aliens who were otherwise excludable on the basis of a prior criminal conviction. Under § 212(c) of that act, any lawfully admitted alien “who temporarily proceeded abroad voluntarily ... and who [is] returning to a lawful unrelinquished domicile of seven years” was eligible for this discretionary waiver. INA § 212(c), 8 U.S.C. § 1182(c) (1994 ed.). Thus, under the law as it then existed, Zalawadia’s criminal conviction would affect his immigration status only if his travel outside the United *295 States was not “brief, casual or innocent” and even then, he would be eligible to apply for discretionary relief with the Attorney General could he prove seven years of unrelinquished domicile.
The passage of the Antiterrorism and Effective Death Penalty Act (AEDPA) and Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) in 1996 had two specific effects on Zalawadia’s immigration status. First, the IIRIRA’s amendments to the INA ostensibly superseded the rule announced in Fleuti; under the amended INA, 8 U.S.C. § 1101(a)(13)(C)(v), as interpreted by the Board of Immigration Appeals (BIA), a lawful permanent resident could be barred from reentry regardless of the nature of his travel outside the country. See In re Collado-Munoz, 21 I. & N. Dec. 1061, 1997 WL 805604 (BIA Dec. 18, 1997).[3] In addition, the IIRIRA specifically repealed § 212(c), replacing it with § 240A, 8 U.S.C. § 1229b. Zalawadia was no longer eligible for a discretionary waiver from the Attorney General under this new provision.[4]
Zalawadia soon felt the effects of these statutory changes. In 1998, he briefly left the country on a business trip abroad. Upon returning, because the INS had concluded that Fleuti’s rule no longer applied, he was treated as an arriving alien, detained, and issued a Notice to Appear charging him with inadmissibility as a result of his 1995 convictions. In the original removal proceedings before an immigration judge, Zalawadia conceded removability but requested cancellation of his removal order pursuant to § 240A(a) of the INA — the provision that had replaced § 212(c). The immigration judge found that Zalawadia’s convictions prevented him from meeting the residency requirements for cancellation of removal (seven years of unrelinquished lawful domicile) and ordered him removed.
Zalawadia filed a timely appeal to the BIA. There, apparently for the first time, he contended that he was entitled to claim eligibility for a waiver under the old Immigration and Nationality Act, § 212(c). That appeal was dismissed, because the BIA found that the IIRIRA’s repeal of § 212(c) should be applied retroactively. Zalawadia’s motion to reconsider and reopen was also dismissed.
Zalawadia then filed a petition for a writ of habeas corpus in federal district court.[5] There, he contended that his detention and removal order were illegal because the BIA had improperly applied retroactively the provisions of the IIRIRA, thereby erroneously determining him to be ineligible for § 212(c) relief. The habeas petition was dismissed, as was Zalawadia’s request for a stay of the removal order. Zalawa- *296 dia appealed to this court, but while his appeal was pending, he was deported. We then dismissed his appeal. That dismissal did not end this case, however.
Following his deportation and our dismissal of his appeal, Zalawadia filed a petition for a writ of certiorari with the Supreme Court, which was granted. The Supreme Court vacated this court’s judgment in the light of INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), a 2001 case holding, in relevant part, that the IIRIRA did not apply retroactively. We then vacated the decision of the district court and remanded for further consideration consistent with Si Cyr.
After remand, a magistrate judge recommended that Zalawadia’s habeas petition be denied because he had not accrued seven years of unrelinquished lawful domicile at the time of the plea agreement in his criminal case — a precondition to eligibility for § 212(c) relief. See 8 U.S.C. § 1182(c) (1994 ed.). In short, the magistrate found that Zalawadia was not entitled to habeas relief because the order of deportation did not violate Zalawadia’s rights under the statute. The district court adopted the magistrate’s recommendation and this appeal followed.
II
Zalawadia now contends that the district court erred in considering the merits of his claim of eligibility for relief instead of remanding the matter to the BIA (which had not had the chance to consider his arguments on the seven-year domicile requirement), as it should have under INS v. Ventura, 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).[6] Accordingly, he urges us to grant habeas relief by reversing and vacating the district court judgment and remanding to that court with instructions that it remand the case to the BIA, directing it to consider his claims under § 212(c).
In response, the government concedes that the district court committed error in considering Zalawadia’s eligibility for relief de novo; it concedes that, in accordance with Ventura, such questions are for the BIA to determine in the first instance. Irrespective of whether the district court erred in that respect, its error is irrelevant to a determination of this appeal. More fundamentally, the government contends that the district court had no habeas jurisdiction to hear this case in the first place. It asserts that because Zalawadia has been deported, he cannot satisfy the “in custody” requirement for federal habeas jurisdiction. Alternatively, the government contends that even if habeas jurisdiction does exist, Zalawadia is still not entitled to any relief as removed aliens are not authorized by statute or regulation to apply for § 212(c) relief from abroad. We disagree that we lack habeas jurisdiction. We do agree, however, that we do not have authority as a habeas court to order the relief Zalawadia seeks, albeit for different reasons than those urged by the government. We hold that relief in this habeas proceeding is limited to vacating the order of deportation.
Ill
As a threshold matter, we must determine whether the district court had *297 habeas jurisdiction over this case. We hold that it did.
The government contends that habeas jurisdiction no longer exists here because Zalawadia has been deported and is no longer in custody; accordingly, it argues that he is unable to satisfy the “in custody” requirement of federal habeas jurisdiction. This argument, however, is foreclosed by our own precedent as well as the unanimous precedent of our sister circuits.
The Supreme Court has made it clear that the “in custody” determination is made at the time the habeas petition is filed. Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); Carafas v. LaVallee, 391 U.S. 234, 237-38, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). Moreover, this court has previously held that this rule applies to petitioners who have been deported in the same way it applies to any other habeas petitioner no longer in custody. In Max-George v. Reno, 205 F.3d 194 (5th Cir.2000), rev’d on other grounds, 533 U.S. 945, 121 S.Ct. 2585, 150 L.Ed.2d 746 (2001), this court exercised habeas jurisdiction over a deported alien where that alien had been in custody at the time the suit was filed. When confronted with similar facts, our sister circuits have reached the same conclusion, uniformly holding that a deportation subsequent to the- filing of the petition in habeas corpus does not deprive the courts of jurisdiction. See Leitao v. Reno, 311 F.3d 453, 455 (1st Cir.2002); Chong v. District Director, INS, 264 F.3d 378 (3d Cir.2001); Smith v. Ashcroft, 295 F.3d 425 (4th Cir.2002); Zegarra-Gomez v. INS, 314 F.3d 1124 (9th Cir.2003).
The government nevertheless objects to the district court exercising jurisdiction, arguing that Zalawadia’s changed condition, i.e., his deportation, has caused him to lose his “in custody” status. It notes that the Supreme Court has never held that a habeas petitioner’s “in custody” status, once established, may never be lost as a result of an event occurring during the pendency of the habeas litigation. Although this is certainly an accurate statement of law, it incorrectly conflates habeas’ “in custody” requirement with the requirement that a petition not be moot. As the Supreme Court explained in -Spencer, for a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that he was in custody at the time he filed the petition and that his subsequent release has not rendered the petition moot, i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution. Spencer, 523 U.S. at 7, 118 S.Ct. 978. The petitioner presents an Article III controversy when he demonstrates “some concrete and continuing injury other than the now-ended incarceration” — a “collateral consequence of the conviction.” Id. (internal quotations removed).
In Max-George, we dealt with a similar question. There, the petitioner had been deported during the pendency of his habe-as petition. The government apparently conceded the fact that the petitioner had filed the petition while in custody, but argued that his subsequent deportation had rendered it moot. We rejected that argument, finding that the petitioner continued to face a concrete collateral consequence of his deportation — a statutory ten-year waiting period before he was eligible for reentry — and therefore, that the petition was not moot. Max-George, 205 F.3d at 196. Other circuits have reached similar conclusions, holding that the bar on readmission of a removed alien is a legally cognizable collateral consequence that preserves a live controversy even after deportation of the petitioner. See Leitao, 311 F.3d at 455; Chong, 264 F.3d at 385; *298 Smith, 295 F.3d at 428; Zegarra-Gomez, 314 F.3d at 1127.
Here, it is undisputed that Zalawadia’s deportation bars him from seeking reentry into the United States for a period of five years. See 8 U.S.C. § 1182(a)(9)(A)®. This penalty constitutes a cognizable collateral consequence; as such, his petition presents a live case or controversy and is not moot. Accordingly, because Zalawa-dia’s petition was filed when ■ he was in custody and is not moot, we hold.that we have habeas jurisdiction this case.
IV
The government contends that even if we do have jurisdiction over this matter, this court should affirm the district court’s judgment because no statute or regulation authorizes an alien who has been removed from the United States to apply for section 212(c) relief. The government notes that according to federal regulations governing the BIA, “a motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States.” 8 C.F.R. § 1003.2(d). It asserts that upon lawful execution of his removal order, the removal case against Zalawadia, for all substantive purposes, was completed. Accordingly, it argues that he is unable to bring this claim before the BIA because federal regulations bar the BIA from hearing it. This argument seems akin to a mootness argument — that his [1] removal mooted any claim for relief that might otherwise be available to him.
In any event, finally resolving this particular question of the federal regulation is not necessary in order to reach a conclusion concerning Zalawadia’s habeas petition. The basic question before this court on habeas review is a narrow one: was Zalawadia’s detention illegal? If it was, we must grant his petition and apply the appropriate remedy. By granting certio-rari, reversing, remanding, and citing Si Cyr, the Supreme Court has already made clear that the deportation order under which Zalawadia had been detained was legally flawed because the BIA improperly applied the IIRIRA’s restrictive provisions retroactively. It follows that, like St. Cyr, Zalawadia’s detention based on that order, which deprived him of the discretionary benefits of the applicable statute, was illegal. Moreover, as we have explained, although Zalawadia has been released from detention, he still faces concrete collateral consequences arising out of that illegal order. Accordingly, Zalawadia is entitled to appropriate habeas relief quite aside from how a particular government regulation may apply to him now. The question is what relief is appropriate in this habeas proceeding.
Zalawadia contends that the acknowledgment of the invalidity of the order of deportation requires a remand to the BIA with instructions to hold a new deportation proceeding in which Zalawadia’s request for § 212(c) relief may be properly considered. ■ After examining his arguments, however, we conclude that the only form of habeas relief appropriate here is for the district court to vacate the original deportation order. Ordering any other relief would be inconsistent with the limited authority a habeas court possesses. We must underscore what this case is and what it is not. This case is not the direct appeal of the BIA’s decision, in which we could review the full scope of Zalawadia’s claims and order the BIA to correct its mistakes. The IIRIRA has indeed *299 stripped us of such jurisdiction.[7] This fact significantly narrows the scope of our review and, by extension, the nature of the relief available.
In St. Cyr, the Supreme Court explicitly acknowledged the significant distinction between direct review and habeas review in the immigration context. Specifically, the Court stated that “it is the scope of inquiry on habeas corpus that differentiates habeas review from judicial review.” 533 U.S. at 312, 121 S.Ct. 2271 (quoting Heikkila v. Barber, 345 U.S. 229, 236, 73 S.Ct. 603, 97 L.Ed. 972 (1953)). The Court noted that the pre-IIRIRA statutory regime allowed for direct review of immigration decisions, observing that this type of review bestowed upon courts the “broad authority to grant declaratory and injunc-tive relief in immigration cases.” Id. at 309, 121 S.Ct. 2271. In contrast, in the wake of the IIRIRA’s withdrawal of such direct review jurisdiction, the sole form of review available to aliens protesting the legality of their deportation is habeas. Id. Under this new, habeas-only regime, “the limited role played by the courts” is “far narrower than the judicial review authorized by the [the old statutory structure].” Id. at 312,121 S.Ct. 2271.
Apart from acknowledging that “the scope of review on habeas is considerably more limited than on [direct review],” St. Cyr did not discuss precisely what those limits are. These limits, however, are readily identified by examining the nature of habeas corpus and analyzing Supreme Court case law in this field. As its Latin meaning suggests, the writ of habeas corpus performs a precise and specific
function: it forces the government to justify a decision to hold an individual in custody. “The very office of the Great Writ, its only function, is to inquire into the legality of the detention of one in custody.” Heflin v. United States, 358 U.S. 415, 421, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); see also Zadvydas v. Davis, 533 U.S. 678, 699, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (holding that the “historic purpose of the writ [is] to relieve detention by executive authorities without judicial trial”) (quoting Brown v. Allen, 344 U.S. 443, 533, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Jackson, J., concurring in result)). A habeas court must thus confine the scope of its review to considering the legality of the custody at issue. Habeas exists “to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power; ... it can act only on the body of the petitioner.” Fay v. Noia, 372 U.S. 391, 430-31, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) (emphasis added). This means that, unlike direct review where the correctness of a court or agency order is comprehensively and directly before the court, a habeas court reviews the correctness of such an order only insofar as it relates to “detention simpliciter,” id. at 430, 83 S.Ct. 822. In other words, habeas is not shorthand for direct review. Unlike direct review where courts have “broad authority” to grant relief, St. Cyr, 533 U.S. at 309, 121 S.Ct. 2271, habeas is not “a generally available federal remedy for every violation of federal rights,” Lehman v. Lycoming County Children’s Ser *300 vices Agency, 458 U.S. 502, 510, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982), nor can it “be utilized to review a refusal to grant collateral administrative relief, unrelated to the legality of custody.” Amanullah v. Nelson, 811 F.2d 1, 17 (1st Cir.1987).
Habeas’ singular focus on the legality of detention not only constrains the scope of a habeas court’s review, it constrains both the class of individuals to whom the writ is available and the nature of relief that court may afford if and when the writ issues. As we previously indicated, only individuals who are in custody at the time of filing may petition the court for habeas relief. The relief available under the writ is similarly limited.
The traditional form of relief available under habeas is discharge of the applicant from current physical custody. See, e.g., Allen v. McCurry, 449 U.S. 90, 98 n. 12,-101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (noting that the “unique purpose of habeas corpus” is “to release the applicant for the writ from unlawful confinement”). Habeas relief, however, is not confined to this form alone; over the years, its mandate has become broader. Carafas v. LaVallee, 391 U.S. 234, 239, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). See also Preiser v. Rodriguez, 411 U.S. 475, 487, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (stating that “habeas corpus relief is not limited to immediate release from illegal custody”). Where an individual is no longer in custody (but was at the time he filed the action), the Court has recognized that the individual may be facing collateral legal restraints on his liberty, flowing from the original order that placed him in detention. Such restraints include legal ineligibility to serve on a jury, vote, hold office or operate certain businesses. Spencer, 523 U.S. at 8, 118 S.Ct. 978. See also Fiswick v. United States, 329 U.S. 211, 221-23, 67 S.Ct. 224, 91 L.Ed. 196 (1946) (conviction rendered petitioner liable to deportation and denial of naturalization, and ineligible to serve on a jury, vote, or hold office); United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954) (conviction had been used to increase petitioner’s current sentence under state recidivist law); Ginsberg v. New York, 390 U.S. 629, 633 n. 2, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (conviction rendered petitioner liable to revocation of his license to operate luncheonette business). Where such collateral consequences exist, the Court has indicated that an appropriate remedy is to vacate or modify the underlying illegal judgment or order under which the petitioner is detained.[8]
Thus, Supreme Court jurisprudence in this field indicates that habeas relief relates directly to the underlying nature of the writ itself — undoing current or future legal restraints on a person’s freedom flowing from an illegal detention. It cannot be utilized to bootstrap other claims for relief unless necessary to assure or to protect the right to the personal liberty interest that is at issue. Amanullah, 811 F.2d at 17. In other words, habeas specifically is not a tool that can be broadly employed to restore the habeas petitioner to his or her status quo ante beyond freeing him from the restraints on liberty arising directly from the illegal order or judgment. Thus, for example, a habeas court may have the power to vacate a conviction on the basis of police or prosecutorial misconduct; however, the habeas court would not have the power to award damages for the time spent in prison or, for example, to order a state agency to *301 hold a reinstatement hearing for the purposes of determining the rights to a job lost because of the conviction. Although there may be other causes of action or other procedural remedies under which such relief would be available, it would not be under habeas, which, unlike remedies involving the direct review of illegal or unconstitutional government acts, has its essence in “detention simpliciter.” Fay, 372 U.S. at 430, 83 S.Ct. 822.
Therefore, Zalawadia’s contention that, in granting the writ, the district court, in this proceeding, should order the BIA to hold a new hearing to consider his rights under § 212 to determine whether he should be deported anew is rejected as beyond the bounds of reviewing his “detention simpliciter.” Having reached the conclusion that vacating the deportation order is the beginning and end of the habeas authority we have, we do not need to address Zalawadia’s entitlement to other forms of relief in this habeas action. These include his request that we order the INS to readmit him into the country for the purposes of a § 212(c) hearing.[9]
We should be clear: In reaching this conclusion, we do not suggest that Zalawa-dia has no way of obtaining other non-habeas remedies. Once his removal order has been vacated, he may be eligible to apply for reentry with the BIA. That question is not before us, however. Once again, we are not engaging in direct review. The only question presented in this habeas case concerns the legality of the order upon which Zalawadia’s detention was based. By acknowledging the illegality of that order and his detention and by vacating the order, thereby removing the cognizable collateral legal consequences of that detention, the federal habeas court has answered and addressed this question.
V
We sum up: Because Zalawadia filed his habeas petition while he was in custody and continues to face a collateral legal consequence of the order placing him there, we hold that the district court had habeas jurisdiction. We also hold, however, that a habeas court lacks the authority to grant the relief Zalawadia seeks — either to order the INS to readmit Zalawadia into the country or to direct the BIA to conduct a new deportation proceeding on Zalawadia’s behalf — as either of these forms of relief are beyond the discrete nature of a habeas action. The sole remedy available under habeas here is for the district court to vacate the removal order. Accordingly, we reverse and vacate the judgment of the district court denying ha-beas relief. We remand with instructions that the district court enter an appropriate order that vacates its judgment and grants the petition for habeas corpus but only to the extent of vacating the BIA’s prior order of deportation against Zalawadia.[10]
*302 REVERSED, VACATED and REMANDED WITH INSTRUCTIONS.

. The INA defined "aggravated felony" as "murder, any illicit trafficking in any controlled substance (as defined in section ... including any drug trafficking crime ... or any illicit trafficking in any firearms or destructive devices ... or any crime of violence ... for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years ...”). 8 U.S.C. § 1101(a)(43)(1994 ed.).

. Conviction of a crime of moral turpitude was a deportable offense only when the conviction came within five years after the original date of entry and resulted in confinement in prison for one year or longer. 8 U.S.C. § 1251(a)(2)(A)(i). Zalawadia’s conviction satisfies neither of these conditions.

. It appears no court has yet reviewed the BIA's determination that Fleuti s rule was superseded by statute. There is no need for us to examine this conclusion in any detail, however, as it has not been challenged here. All that is important in this case is that immigration officials assumed that Fleuti no longer applied, leading them to detain Zalawadia when he attempted to reenter the country.

. The new provision considerably restricted the class of aliens eligible for discretionary relief from the Attorney General. Under its terms, the Attorney General was barred from granting waivers to aliens who, among other things, had been convicted of an aggravated felony. 8 U.S.C. § 1229b(a). The IIRIRA enlarged the definition of offenses constituting aggravated felonies to include, inter alia, burglary and theft offenses for which a one-year term of imprisonment is imposed. 8 U.S.C. § 1101(a)(43)(G).

.Before filing his habeas petition, Zalawadia filed an appeal of the BIA’s decision with this court and also sought a stay of removal. We dismissed the petition for lack of jurisdiction and denied the stay motion. See Zalawadia v. INS, No. 99-60593 (5th Cir. Oct. 21, 1999).

. In Ventura, the Supreme Court held that federal courts are not generally empowered to conduct initial inquiries into matters that statutes place primarily in agency hands. In such cases, the agencies perform the role of initial factfinders; federal courts may only properly involve themselves after the agencies have first considered the underlying merits of the claim, and then only in an appellate review fashion. 537 U.S. at 16-17, 123 S.Ct. 353.

. Under the IIRIRA, habeas actions are the only avenue of appeal open to an individual in Zalawadia's position. The IIRIRA specifically states that courts of appeals have no authority to engage in direct review of a final order of deportation against an alien who is removable by reason of committing a criminal offense like the one Zalawadia committed here. See 8 U.S.C.A. § 1252(a)(2)(c). The Supreme Court has held that this statute did not, however, preclude individuals from seeking habe-as review of such an order. See St. Cyr, 533 U.S. at 294-315, 121 S.Ct. 2271.

. The habeas remedy removes the disability that may be a bar to the exercise of liberty interests; it does not order the deprived benefit be automatically granted by the government.

. Our authority to order Zalawadia to be readmitted into the country is not only constrained by the nature of habeas review; this case also concerns subject matter in which courts are most reluctant to involve themselves. The Supreme Court has long recognized that power over aliens is "a fundamental sovereign attribute ... largely immune from judicial control,” Shaughnessy v. U.S. ex rel. Mezei, 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953), and is "of a political character and therefore subject only to narrow judicial review.” Hampton v. Mow Sun Wong, 426 U.S. 88, 101 n. 21, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976). See also Harisiades v. Shaughnessy, 342 U.S. 580, 596-97, 72 S.Ct. 512, 96 L.Ed. 586 (1952) (Frankfurter, J., concurring) ("The conditions for entry of every alien ... have been recognized as matters solely for the responsibility of the Congress and wholly outside the power of this Court to control.”).

. We fail to understand the dissent's strenuous contention that our holding in this case "render[s] nugatory the Supreme Court's ex *302 press directive in its remand of this case to us.” Dissent at p. 302. In its succinct remand of this case, the Court stated: "Judgment vacated, and case remanded to the United States Court of Appeals for the Fifth Circuit for further consideration in light of INS v. St. Cyr." Zalawadia v. Ashcroft, 533 U.S. 943, 121 S.Ct. 2581, 150 L.Ed.2d 742 (2001). The cursory and non-specific nature of the remand in this case is typical of other remands of cases pending on certiorari before the Supreme Court that are affected by a Court decision issued in another analogous case. In characteristic fashion, the remand here simply directed lower courts to reconsider Zalawadia's case in the light of the recently-decided St. Cyr and, implicitly, to grant any appropriate corresponding relief. This course is precisely what we have followed in this case. We have determined that St. Cyr does control, that the order of deportation issued against Zalawadia was invalid, and that the appropriate form of corresponding relief is the vacatur of this order. Thus, while the dissent may disagree with our conclusions concerning whether vacatur is the appropriate form of corresponding relief, there is simply no basis for its contention that our decision is inconsistent or in any other way "irreconcilable” with the Supreme Court's remand in this case.
Secondly, we are a bit baffled by the dissent's claim that Zalawadia is entitled to "more” habeas relief than we have granted him. Indeed, we cannot conceive the form such additional relief would take, short of ordering the defendants to readmit Zalawadia into the country — relief that the dissent explicitly concedes is unavailable. The dissent’s proposed "additional” relief — specifically, "an opportunity to plead his case to the BIA ... [and] seek 212(c) relief” — is not additional at all: The best result Zalawadia could obtain from such an opportunity is a BIA ruling that he indeed had been entitled to a waiver of deportation, that the order of deportation was error, and a corresponding order vacating the erroneous deportation order against him; yet this is precisely the relief we have already granted him — the vacatur of the deportation order. Thus, the dissent's contention that we are unjustifiably and improperly circumscribing the scope of habeas remedies available to Zalawadia seems flawed and wrong.

. Opinion at p. 300.