**UNITED STATES of America,**
**Appellee,**

v.

**Linda Adeline MALENGE,**
**Defendant–Appellant.**

**No. 07–2823–cr.**

United States Court of Appeals,
Second Circuit.

Sept. 29, 2008.

Alexander Bunin, Federal Public Defender for the Northern District of New York, Gene V. Primomo, Assistant Federal Public Defender, Albany, N.Y., Appearing for Defendant–Appellant.

Glenn T. Suddaby, United States Attorney for the Northern District of New York, Paul D. Silver and Edward P. Grogan, Assistant United States Attorneys, Albany, N.Y., Appearing for Appellee.

Present: ROSEMARY S. POOLER, PETER W. HALL, Circuit Judges, and DAVID G. TRAGER,* District Judge.

### SUMMARY ORDER

Defendant–Appellant Linda Adeline Malenge ("Malenge" or "appellant") is a native and citizen of the Democratic Republic of the Congo. She fled the Congo on October 23, 2005, eight days after being violently assaulted in her home by government forces looking for a member of her family. Her destination was Bridgeport, Connecticut, where her Congolese husband was already living as a refugee. On February 26, 2006, Malenge boarded an Amtrak train in Montreal that was destined for New York City. Malenge was arrested by a Customs and Border Patrol Officer when she attempted to enter the United States using a false passport and identity. The United States Attorney's Office for the Northern District of New York ("USAO") subsequently charged Malenge with false personation, misuse of a passport and false use of a passport. On February 6, 2007, the district court denied Malenge's motion to dismiss the criminal indictment. *United States v. Malenge,* 472 F.Supp.2d 269 (N.D.N.Y.2007). On March 7, 2007 Malenge entered a plea of guilty to all three counts of the indictment, and on

June 20, 2007 she was sentenced to time served and a two-year term of supervised release. Malenge is now appealing the order denying her motion to dismiss the indictment. We assume the parties' familiarity with the procedural history, facts and issues raised on this appeal.

As an initial matter, there is some dispute about when Malenge announced her request for asylum. According to the arresting officer, Malenge never made any verbal statements asking for asylum. The officer only realized that Malenge was seeking asylum after she had been sent to jail, when he reviewed the paperwork that Malenge had filled out. However, the officer also recalled that Malenge "did tell me that she wished to enter the United States to be with her husband, 'Nono Malenge,' whom she claimed was a refugee living in Connecticut." At that point, the officer should have recognized that Malenge was likely entitled to a derivative asylum claim based on her husband's refugee status, *see* 8 U.S.C. § 1158(b)(3)(A), and pursued this issue further. Regardless, the fact remains that the USAO was aware that Malenge sought asylum when it prosecuted her case. Therefore, this factual dispute does not affect the legal issue of whether Malenge's prosecution violates the legal rights created by her refugee status.

■ Malenge argues that her prosecution violates Article 31(1) of the United Nations Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150. Although the United States is not a signatory to the Convention, it is bound to comply with the Convention pursuant to its accession to the United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223. *See INS v. Stevic,* 467 U.S. 407, 416, 104 S.Ct. 2489, 81

---

* The Honorable David G. Trager, Senior District Judge of the United States District Court for the Eastern District of New York, sitting by designation.

L.Ed.2d 321 (1984). Article 31(1) instructs that "[t]he Contracting States shall not impose penalties, on account of their illegal entry or presence, on refugees who, coming directly from a territory where their life or freedom was threatened in the sense of article 1, enter or are present in their territory without authorization, provided they present themselves without delay to the authorities and show good cause for their illegal entry or presence." The 1967 Protocol, however, is not a self-executing treaty. Accordingly the Protocol does not provide Malenge with any judicially enforceable rights. *See Bertrand v. Sava*, 684 F.2d 204, 218–19 (2d Cir.1982) (finding that the Protocol's provisions "were not themselves a source of rights under our law unless and until Congress implemented them by appropriate legislation"). Because Malenge cannot seek relief under the Protocol, there is no need to review the district court's interpretation of the language of Article 31(1).

■ Malenge also argues that her prosecution violates the federal immigration laws enacted in conformity with these international obligations. But Malenge has failed to show that her prosecution is barred by any federal statute or regulation. The government correctly argues that the administrative regulation found at 8 C.F.R. § 270.2(j), which largely tracks Article 31(1) and which limits the authority of the Department of Homeland Security to commence civil proceedings against certain refugees for document fraud, does not apply to this criminal prosecution.

■ Finally, Malenge argues that her due process rights as a refugee have been violated, because her felony conviction has diminished the chance that her asylum claim will succeed. This argument also fails. In light of Malenge's ongoing asylum proceedings, there is no basis for concluding that her procedural rights have been violated. Malenge reasonably worries that her felony conviction may prejudice her pending asylum claim. *See* 8 U.S.C. § 1158(b)(2)(A)(ii). But she has provided no legal support to show that this Court has the authority to prevent her prosecution in order to protect the substance of her asylum claims.

Appellant asks the Court to require that the USAO await an asylum determination before prosecuting a refugee for entering the country using false documentation. Although we cannot grant this request, it has significant merit. Deferring prosecution would, assuming appellant is correct that her burden for seeking asylum has increased, prevent a felony conviction from unnecessarily prejudicing a refugee's claim for asylum. It would also allow the Department of Justice to exercise its prosecutorial discretion after a full evaluation of an asylum seeker's credibility.

It appears that the USAO has instead established a blanket policy of immediately prosecuting asylum seekers for their use of false documentation. This practice is troubling, to say the least. If Malenge has a credible asylum claim (and there are no facts before the Court to suggest otherwise), then she is legally entitled to enter and remain in the United States. She apparently entered the country illegally because she was unaware that she could safely enter legally. This prosecution penalizes her for her ignorance, in contradiction of our government's policy of providing safe haven to refugees fleeing political violence and persecution. Moreover, this prosecution appears to place this United States Attorney's Office at odds with the Executive Branch as a whole, which has committed, through the above-cited international agreements, to avoid such penalties.

We note as well that, under the Agreement Between the Government of the United States of America and the Govern-

ment of Canada for Cooperation in the Examination of Refugee Status Claims from Nationals of Third Countries, U.S.-Can., Dec. 5, 2002, available at http://www.uscis.gov/files/article/appendix-c.pdf, some aliens arriving in the United States from Canada at a land border port-of-entry may be returned to Canada to seek protection under Canadian immigration law. *See Maharaj v. Gonzales,* 450 F.3d 961, 977 n. 11 (9th Cir.2006). This "Safe Third Country Agreement" is intended to prevent forum-shopping by asylum seekers, and to promote the orderly handling of asylum claims along the United States–Canadian border. Under an exception created by Article 4 of the Agreement, Malenge was entitled to pursue asylum in the United States at the time of her arrival, because her husband was already living here as a refugee with a pending asylum claim. However, United Nations observers who are evaluating the Safe Third Country Agreement have seen a number of prosecutions similar to Malenge's. Almost all of these prosecutions originated at the Champlain Port of Entry where Malenge was arrested. *See* United Nations High Commissioner for Refugees, *Monitoring Report: Canada–United States "Safe Third Country" Agreement,* at 66 & App. 8 (June 2006), available at www.unhcr.org/home/PROTECTION/455b2cca4.pdf.

The UNHCR report also found that refugees were detained for significantly longer amounts of time on average when they were prosecuted for using false documents, *see id.,* suggesting that such prosecutions are impeding the expeditious processing of asylum claimants. In contrast, as illustrated by the UNHCR report and discussed during oral argument of this case, refugees who enter the United States illegally at other land border points are being processed without criminal prosecution. This shows that other jurisdictions are managing the challenges of border security and immigration control without resorting to these criminal charges.

In short, we agree with appellant that this prosecution is fundamentally inconsistent with the policies and obligations of the federal government with regard to the treatment of refugees. It is clearly preferable that refugees announce themselves to American officials as soon as they reach the border. We do not take lightly the fact that Malenge tried to enter the country by presenting false identification and lying to border officers. But we also recognize that some refugees, particularly those fleeing political violence, harbor a natural distrust of government officials. Many of these refugees are likely to receive misinformation, from smugglers and others, about the appropriate way to seek refuge in this country. There is surely a more appropriate way to handle such cases, and to deter such conduct, short of criminal prosecution.

In this regard, we also note our concurrence with the district court's observation that Malenge's use of false documentation should not create a basis for denying her asylum application. This Court has observed that "[t]he BIA and several of our sister circuits have recognized that a petitioner's use of false travel documents to escape persecution is fully consistent with an asylum claim and should not be used as a basis to deny asylum." *Lin v. Gonzales,* 445 F.3d 127, 133 (2d Cir.2006). *See also Huang v. INS,* 436 F.3d 89, 100 (2d Cir. 2006) ("[I]f illegal manner of flight and entry were enough independently to support a denial of asylum, ... virtually no persecuted refugee would obtain asylum."). We are not reviewing Malenge's asylum claim at this time. But we note one sister circuit who has considered the issue and found that it would be an abuse of discretion for an immigration judge to give undue weight to a refugee's use of false

documents when fleeing persecution, or to use such misconduct as the basis for denying asylum to an applicant who is otherwise eligible. *See Mamouzian v. Ashcroft,* 390 F.3d 1129, 1138 (9th Cir.2004).

For the reasons stated above, the order of the district court is AFFIRMED.