FRED BIERY, UNITED STATES DISTRICT JUDGE
Before the Court is the 28 U.S.C. § 2241 Habeas Corpus Petition filed by Mindra Berecz Bansci and Junior Munteanu ("Petitioners") (Docket Entry "DE"
*732 1); Petitioners' Motion for Emergency Hearing (DE 2); Respondents' Motion to Dismiss (DE 16); Petitioners' Response to Respondents' Motion to Dismiss (DE 18); Respondents' Reply (DE 19); Petitioners' Surreply (DE 25); and Christine P. Payne's Motion to Appear Pro Hac Vice on behalf of Petitioners (DE 16). Upon consideration, Respondents' Motion to Dismiss (DE 16) is GRANTED; Petitioners' § 2241 Petition (DE 1) is DISMISSED; and Petitioners' Motion for Emergency Hearing (DE 2) and Young's Motion to Appear Pro Hac Vice (DE 17) are DENIED AS MOOT.
I. Factual and Procedural Background
Petitioners are citizens of Romania who, on June 2, 2018, entered the United States via Canada. (DE 1). According to the Safe Third Country Agreement ("STCA") between Canada and the United States, aliens entering the United States from Canada at a land border port-of-entry may be returned to Canada to seek protection under Canadian immigration law. See United States v. Malenge , 294 F. App'x 642, 644-45 (2d Cir. 2008) (citing "Agreement Between the Government of the United States of America and the Government of Canada for Cooperation in the Examination of Refugee Status Claims from Nationals of Third Countries", U.S.-Can., Dec. 5, 2002, available at http://www.uscis.gov/files/article/appendix-c.pdf). The Code of Federal Regulations sets out the process for determining whether an alien seeking asylum in the United States will be returned to Canada, providing that:
Prior to any determination concerning whether an alien arriving in the United States at a U.S.-Canada land border port-of-entry or in transit through the U.S. during removal by Canada has a credible fear of persecution or torture, the asylum officer shall conduct a threshold screening interview to determine whether such an alien is ineligible to apply for asylum pursuant to section 208(a)(2)(A) of the Act and subject to removal to Canada by operation of the Agreement Between the Government of the United States and the Government of Canada For Cooperation in the Examination of Refugee Status Claims from Nationals of Third Countries ("Agreement"). In conducting this threshold screening interview, the asylum officer shall apply all relevant interview procedures outlined in paragraph (d) of this section, provided, however, that paragraph (d)(2) of this section shall not apply to aliens described in this paragraph. The asylum officer shall advise the alien of the Agreement's exceptions and question the alien as to applicability of any of these exceptions to the alien's case.
(i) If the asylum officer, with concurrence from a supervisory asylum officer, determines that an alien does not qualify for an exception under the Agreement during this threshold screening interview, the alien is ineligible to apply for asylum in the United States. After the asylum officer's documented finding is reviewed by a supervisory asylum officer, the alien shall be advised that he or she will be removed to Canada in order to pursue his or her claims relating to a fear of persecution or torture under Canadian law. Aliens found ineligible to apply for asylum under this paragraph shall be removed to Canada.
(ii) If the alien establishes by a preponderance of the evidence that he or she qualifies for an exception under the terms of the Agreement, the asylum officer shall make a written notation of the basis of the exception, and then proceed immediately to a determination concerning whether the alien has a credible fear *733 of persecution or torture under paragraph (d) of this section.
(iii) An alien qualifies for an exception to the Agreement if the alien is not being removed from Canada in transit through the United States and
(A) Is a citizen of Canada or, not having a country of nationality, is a habitual resident of Canada;
(B) Has in the United States a spouse, son, daughter, parent, legal guardian, sibling, grandparent, grandchild, aunt, uncle, niece, or nephew who has been granted asylum, refugee, or other lawful status in the United States, provided, however, that this exception shall not apply to an alien whose relative maintains only nonimmigrant visitor status, as defined in section 101(a)(15)(B) of the Act, or whose relative maintains only visitor status based on admission to the United States pursuant to the Visa Waiver Program;
(C) Has in the United States a spouse, son, daughter, parent, legal guardian, sibling, grandparent, grandchild, aunt, uncle, niece, or nephew who is at least 18 years of age and has an asylum application pending before U.S. Citizenship and Immigration Services, the Executive Office for Immigration Review, or on appeal in federal court in the United States;
(D) Is unmarried, under 18 years of age, and does not have a parent or legal guardian in either Canada or the United States;
(E) Arrived in the United States with a validly issued visa or other valid admission document, other than for transit, issued by the United States to the alien, or, being required to hold a visa to enter Canada, was not required to obtain a visa to enter the United States; or
(F) The Director of USCIS, or the Director's designee, determines, in the exercise of unreviewable discretion, that it is in the public interest to allow the alien to pursue a claim for asylum, withholding of removal, or protection under the Convention Against Torture, in the United States.
8 C.F.R. § 208.30(e)(6).
In this case, Petitioners were screened, and it was determined they did not satisfy any of the listed exceptions to the STCA; as a result, Petitioners were issued an expedited order of removal and were returned to Canada to pursue their asylum claims under Canadian law.
On July 9, 2018, Petitioners filed a § 2241 Habeas Corpus Petition, along with a Motion for Emergency Expedited Hearing, seeking to prevent or postpone their expedited removal by the Bureau of Immigration and Customs Enforcement (ICE) on the basis that they had been denied the right to a credible fear interview despite indicating their intention to apply for asylum and expressing fear of returning to Romania. (DE 1). This Court entered an order, dated July 10, 2018, requiring Respondents to file an expedited response and further, ordering that the expedited order of removal be immediately stayed. (DE 6). However, unbeknownst to the Court, at the time it entered its order, Petitioners were already in the process of being removed to Canada. (DE 16-1). In fact, at 4:59 p.m. when Petitioners' § 2241 Habeas Corpus Petition was file stamped, Petitioners were en route to New York, *734 from where they would then be removed to Canada. (DE 1; DE 16-1).
Respondents then filed a Motion to Dismiss, maintaining Petitioners' habeas motion is moot in light of Petitioners' removal. (DE 16). Respondents also argued that this Court lacks subject matter jurisdiction over this case because Petitioners' request for a stay of the removal proceedings is expressly precluded by Section 1252(e)(5). (DE 19). Petitioners contend their claims are not mooted by removal because they challenge their removal proceedings and the collateral consequences rather than the length or conditions of their detention. (DE 18). They maintain they have been deprived of a meaningful right to apply for asylum, withholding of removal, and Convention Against Torture (CAT) relief under the government statutes and regulations. (DE 1). Petitioners seek an Order vacating their unlawful expedited removal orders and ordering that their asylum claims be processed, beginning with a credible fear interview. (Id.).
II. Discussion
A. Is this case moot?
Petitioners bring this action pursuant to 28 U.S.C. § 2241, which authorizes a district court to grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States.' " 28 U.S.C. § 2241(c)(3) ). Respondents maintain that "this habeas petition and Petitioners' 'Motion for an Expedited Hearing' are moot because the Petitioners were no longer being detained and were removed to Canada when the petition was filed, and they were removed by the time the Court's July 10[th] Order was issued." (DE 16 at 2). However, physical detention is not required for a petitioner to meet the custody requirement and obtain habeas relief. Rumsfeld v. Padilla , 542 U.S. 426, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004) ("[O]ur understanding of custody has broadened to include restraints short of physical confinement[.]"); see also Jones v. Cunningham , 371 U.S. 236, 239-40, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (recognizing that restraints on liberty other than physical confinement may constitute custody for habeas purposes).
Further, although Respondents assert that Petitioners "were removed by the time the Court's July 10[th] Order was issued", the "in custody" determination is made as of the time the habeas petition is filed. Spencer v. Kemna , 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (citing Carafas v. LaVallee , 391 U.S. 234, 237-38, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) ). Once federal habeas jurisdiction has attached, "it is not defeated by the release of the petitioner prior to the completion of proceedings on such application." Carafas , 391 U.S. at 237-38, 88 S.Ct. 1556 ; see also Zalawadia v. Ashcroft , 371 F.3d 292, 297 (5th Cir. 2004) (citing Max-George v. Reno , 205 F.3d 194 (5th Cir.2000), rev'd on other grounds , 533 U.S. 945, 121 S.Ct. 2585, 150 L.Ed.2d 746 (2001) ).
However, before a court can exercise habeas jurisdiction over a petitioner no longer in custody, "the petitioner must demonstrate that ... his subsequent release has not rendered the petition moot, i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution." Zalawadia , 371 F.3d at 296. "The petitioner presents an Article III controversy when he demonstrates 'some concrete and continuing injury other than the now-ended [detention]'-a 'collateral consequence of the conviction.' " Id. (quoting Spencer , 523 U.S. at 7, 118 S.Ct. 978 ).
In the present case, Petitioners' deportation bars them from seeking reentry into the United States for a period of five *735 years, a penalty that has been found to constitute a cognizable collateral consequence. Id. at 297 (citing 8 U.S.C. § 1182(a)(9)(A)(i) ). Accordingly, Petitioners' challenge to the removal order, which was filed at the time they were en route to New York and still in custody, is not rendered moot by their removal. Id. ; see also Geronimo v. Mukasey , 535 F.Supp.2d 808, 811-12 (W.D. Tex. 2008) (providing petitioner's removal was not moot because it barred him from seeking reentry for twenty years).
B. Does this Court have jurisdiction?
It is well settled that " '[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.' " Gunn v. Minton , 568 U.S. 251, 256, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of Am. , 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ). Because federal courts are " 'duty-bound to examine the basis of subject matter jurisdiction sua sponte ,' " the Court first considers whether it has jurisdiction to hear Petitioners' claims. See Lane v. Halliburton , 529 F.3d 548, 565 (5th Cir.2008) (quoting Union Planters Bank Nat. Ass'n v. Salih , 369 F.3d 457, 460 (5th Cir.2004) ).
1. The REAL ID Act
Petitioners allege that this Court has jurisdiction pursuant to 8 U.S.C. § 1252(e)(2) (INA provision providing habeas jurisdiction over certain challenges to expedited removal); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2241 (general habeas statute); Art. I., § 9, Cl. 2 of the United States Constitution (Suspension Clause); Art. II of the United States Constitution; and Amendment V to the United States Constitution and the Common Law. (DE 1 at 2). However, in May 2005, Congress passed the REAL ID Act, which "divested federal [district] courts of jurisdiction over § 2241 [habeas] petitions attacking removal orders." Rosales v. Bureau of Immigration & Customs Enf't , 426 F.3d 733, 736 (5th Cir.2005). Pursuant to the Act, "a petition for review filed with an appropriate court of appeals ... shall be the sole and exclusive means of judicial review of an order of removal entered or issued under any provision of [Chapter 12]." 8 U.S.C.A. § 1252(a)(5). Section 1252(e)(1) further limits review of an expedited removal order, providing that no court may enter "declaratory, injunctive, or other equitable relief" pertaining to an expedited removal order except as "specifically authorized in a subsequent paragraph of this subsection." Section 1252(e) specifically provides that:
Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of-(A) whether the petitioner is an alien, (B) whether the petitioner was ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title[.]
Id. § 1252(e)(2).
Petitioners maintain their claims are "directly within the scope of the permitted jurisdictional grounds under 8 U.S.C. § 1252(e)(2) insofar as "[o]ne of Petitioners' challenges in the underlying dispute is whether they were legitimately 'ordered removed under the expedited removal provisions.' " (DE 22 at 6). Petitioners argue that "[t]he express language of the expedited removal statute requires that aliens who express an intention to seek asylum be given a credible fear interview before *736 an expedited removal order can become final." (Id.). They essentially seek to challenge the validity of their removal orders, maintaining the orders should be vacated because Petitioners "did not receive a credible fear interview based on an inaccurate and procedurally flawed Safe Third Country Agreement screening interview." (Id.).
However, § 1252(e)(5) specifically provides that in determining whether the petitioner was ordered removed under § 1225(b)(1), "the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually admissible or entitled to any relief from removal." Solis-de Patino v. Pitts , 823 F.Supp.2d 457, 460 (W.D. Tex. 2011) (rejecting petitioner's argument that because the original expedited order of removal was not appropriately executed and failed to comply with regulations, the court had jurisdiction to consider "whether such an order was in fact issued"); see also Osorio-Martinez v. Attorney Gen. United States of Am. , 893 F.3d 153, 164 (3d Cir. 2018) (citing Castro v. United States Dep't of Homeland Sec. , 835 F.3d 422, 428-30 (3d Cir. 2016), cert. denied sub nom. Castro v. Dep't of Homeland Sec. , --- U.S. ----, 137 S.Ct. 1581, 197 L.Ed.2d 705 (2017) (rejecting Petitioners' argument that court retained jurisdiction to review whether they had been "ordered removed" based on Petitioners' contention that the removal orders were invalid) ).
Accordingly, 8 U.S.C. § 1252(e)(2) strips this Court of jurisdiction to review Petitioners' challenge to their expedited orders of removal.
2. Suspension Clause of the United States Constitution
Petitioners contend that "even if this Court found that 8 U.S.C. § 1252(e)(2) barred habeas review of Petitioners' claims, such suspension of habeas corpus would be unconstitutional as applied to Petitioners following Boumediene v. Bush , 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008)." (DE 22 at 6). They maintain that "[n]othing in the INA provides that asylum seekers may be issued final orders of expedited removal yet denied the substantive and procedural protections required by the expedited removal statutes, simply because those asylum seekers arrived from Canada." (DE 1 at 11).
The Suspension Clause of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. To determine whether a jurisdiction-stripping statute such as § 1252(e)(2) violates the Suspension Clause, the Court applies the two-step analysis established by Boumediene , 553 U.S. 723, 128 S.Ct. 2229. Under this framework, the Court first determines whether a habeas petitioner is prohibited from invoking the Suspension Clause due to some attribute of the petitioner or to the circumstances surrounding her detention or removal. Id. at 739, 128 S.Ct. 2229. Only after confirming that the petitioner is not prohibited from invoking the Suspension Clause does the court then turn to the second step of this inquiry and consider whether the substitute for habeas corpus provided by the jurisdiction-stripping statute is adequate to test the legality of the petitioner's removal. Castro , 835 F.3d at 438. In determining whether or not a petitioner can invoke the protection of the Suspension Clause, the following factors are considered: "(1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of *737 the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ." Id. (quoting Boumediene , 553 U.S. at 766, 128 S.Ct. 2229 ).
In Castro , 835 F.3d 422, the Court applied the Boumediene analysis in determining whether petitioners, natives and citizens of El Salvador, Honduras, and Guatemala who entered the United States seeking asylum and were ordered removed after receiving negative credible fear determinations, could invoke the Suspension Clause in challenging the Court's lack of jurisdiction to review their expedited orders of removal. Id. at 427-28. The Court found petitioners' Suspension Clause claim failed at step one because "the Supreme Court has unequivocally concluded that 'an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application.' " Id. at 445 (quoting Landon v. Plasencia , 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ). The Court noted that petitioners had been apprehended within hours of entering the United States and as "alien[s] seeking initial admission to the United States," petitioners could not "invoke the Constitution, including the Suspension Clause, in an effort to force judicial review beyond what Congress has already granted them." Id. at 445-46.
In the present case, Petitioners cite to Osorio-Martinez , 893 F.3d 153, in support of their position that they are entitled to relief under the Suspension Clause, arguing that " 8 U.S.C. § 1252(e)(2) is not an adequate substitute for habeas review [as it] it precludes a court from reviewing the 'uncontroversial minimum demanded by the Great Writ.' " However, Osorio-Martinez is readily distinguishable in that the Court first found petitioners were entitled to invoke the Suspension Clause and then went on to address the second step set out in Boumediene. With respect to the first step, however, the Court found that unlike "aliens 'on the threshold of entry who clearly lack constitutional due process protections concerning their application for admission,' " the petitioners had applied for and been accorded Special Immigrant Juvenile status while the Castro litigation was pending and, as a result, had developed sufficient connections to this country over a two year period; therefore, petitioners could properly invoke the Constitution's protections.
Unlike the petitioners in Osorio-Martinez , the Petitioners in the present case were detained at the border and remained in the United States approximately one week before being issued an order of expedited removal. Petitioners claim, however, that "they have important ties to the United States that distinguish them from other aliens seeking entry." In particular, Petitioners, who have been well represented by counsel throughout these proceedings, state that they "may" qualify for the family exception to the Safe Third Country Agreement if they are permitted to identify all their family members in the United States in their native language. Petitioners' tentative claim hardly demonstrates significant connections to this country so as to warrant the Constitution's protections.
Further, as Respondents point out, every circuit court, including the Fifth Circuit, has explicitly or implicitly rejected similar Suspension Clause challenge to Sections 1252(e)(2) and (e)(5) - even after Boumediene , 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008). See Brumme v. INS , 275 F.3d 443, 448 (5th Cir. 2001) (characterizing argument that courts have jurisdiction under § 1252(e)(2)(B) to determine whether the expedited removal statute *738 "was applicable in the first place" as an attempt to make "an end run around" the "clear" language of § 1252(e)(5) ); Diaz Rodriguez v. U.S. Customs & Border Prot. , 6:14-CV-2716, 2014 WL 4675182, at *4 (W.D. La. 2014), vacated sub nom. Diaz-Rodriguez v. Holder , 14-31103, 2014 WL 10965184 (5th Cir. 2014) ("[T]he legislatively imposed limitation on review of his expedited removal order in his particular case does not run afoul of the Suspension Clause.").
Because Petitioners have not overcome Boumediene's first hurdle, the Court does not address whether the substitute for habeas is adequate and effective to test the legality of the petitioners' removal. While the Court is sympathetic to Petitioners' plight, their inability to invoke the Suspension Clause leaves this Court without jurisdiction to consider Petitioners' claims.
III. Conclusion
For the foregoing reasons, the Court concludes it lacks jurisdiction over Petitioners' claims and therefore, enters the following Orders:
IT IS ORDERED that Respondents' Motion to Dismiss (DE 16) is GRANTED.
IT IS FURTHER ORDERED that Petitioners' § 2241 Petition (DE 1) is DISMISSED
ADDITIONALLY, IT IS ORDERED that all other pending motions, including Petitioners' Motion for Emergency Hearing (DE 2), and Young's Motion to Appear Pro Hac Vice (DE 17), are DENIED AS MOOT .
IT IS FINALLY ORDERED that this case be CLOSED .